IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| WAYNE S. LISKA and BARBARA J. LISKA, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 120744D |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appeal Defendant's denial of claimed Schedule F, Profit and Loss From

Farming, expenses for tax years 2009, 2010 and 2011. A trial was held in the Oregon Tax

Courtroom, Salem, Oregon on January 15, 2013. Bobbie L. Winters (Winters), Certified Public

Accountant, appeared and testified on behalf of Plaintiffs. Plaintiffs, Wayne and Barbara,

testified on their own behalf.[1] Margaret (Peggy) Ellis (Ellis), Tax Auditor, appeared and testified

on behalf of Defendant. Susan Farnsworth (Farnsworth), Tax Auditor, testified for Defendant.

Plaintiffs' Exhibits 1 through 10 and Defendant's Exhibits A through V were admitted

without objection.

## I. STATEMENT OF FACTS

Barbara testified that "in 2005" she "started Hunt Seat Breeding to help fund" Plaintiffs'

"retirement." (*See* Def's Ex J at 1.) She testified that she has "trained and bred horses for 40

years." (*See id*.) In response to questioning, Barbara testified that "Hunt Seat Breeding" is more

---

[1] When referring to a party in a written decision, it is customary for the court to use the last name. However, in this case, the court's Decision recites facts and references to two individuals with the same last name, Liska. To avoid confusion, the court will use the first name of the individual being referenced.

"specialized breeding than quarter horses." She testified that Plaintiffs are in a "joint venture" with Circle S Ranch, located in Scottsdale, Arizona, and owned by her daughter and son-in-law. Barbara testified that the parties "split the sale proceeds after commission" and there is no written joint venture agreement. Barbara testified that the "first sale," "Ben a world champion in 2010, 2011 and 2012," occurred in 2008. She testified that Plaintiffs received $76,654 (rounded) from the sale of "Ben" and recorded $57,733 (rounded) in expenses for a net profit of $18,921 (rounded). (*See* Def's Ex H at 3-4.) Ellis questioned Barbara, asking who paid the stud fee (Barbara responded that Circle S Ranch paid the fee and shipping cost) and Barbara acknowledged that the listed expenses did not include feed, hired labor, and shavings. Barbara testified that there was no "sale contract for Ben;" the sale was recorded by the transfer of registration papers.

Plaintiffs and Winters testified that "horse breeding is a risky business," stating that Plaintiffs "have been plagued with lame horses, a tragic accident with one filly (Reimbursed from insurance for $10,000), and health issues with one broodmare that died." (*See* Compl at 2; Def's Ex J at 1.) Winters stated that "[c]urrently [Plaintiffs] have three horses for sale and expect to receive approximately $95,000. There are three broodmare's (sic) in foal. All three broodmares are either off spring of the 2011 World Champion – Allocate Your Assets, or impregnated with his foal." (*See id.*) Winters testified that because Plaintiffs changed their horse breed in 2005 and the first sale from the "new breed" occurred in 2008, the "two years out of seven years hobby loss rule" gives Plaintiffs until 2014 to show "two profit years."

Barbara testified that she "keeps the books," using a Quicken accounting program. She testified that each horse has a name and the income and expenses are recorded for each horse. Barbara testified that Winters prepared "revised" ranch income and expense statements for 2009,

2010, and 2011. (*See* Def's Ex L.) Winters testified that for each claimed expense a receipt or canceled check was provided to the auditors. Barbara testified that after reviewing each expense category the expense amount reported on the tax return was reduced. (*See id*.) Farnsworth characterized the difference as "unsubstantiated expenses." She testified that some of the receipts provided were for Plaintiffs' personal expenses, e.g. cleaning and house sitting and electricity, and other claimed expenses like "hired labor" were unsubstantiated, noting that Form 1099 was not issued to the named individual even though the total amount exceeded the reporting requirement. Winters countered stating that those "personal" expenses were not reported on the Schedule F and she did not know why those receipts were given to the auditors. Winters testified that the Schedule F is prepared using the "general ledger" and the general ledger "is prepared using canceled checks and credit card statements" and each expense is "coded." In response to Defendant's question, Barbara testified that "the Ranch" received income from Liska & Associates in payment of the Subchapter S corporation's storage of goods in a ranch building. (*See* Def's Ex P.) Ellis characterized this income as "non-horse related income" ($6,000 – 2009; $11,980 – 2010; and $14,000 – 2011) and Barbara testified that there is no written rental agreement between the Hunt Seat Breeding farm business and Liska & Associates. (*See* Def's Ex P at 1.)

Ellis testified that Defendant's audit of Plaintiffs' horse breeding activities considered the "nine factors listed in section 1.183-2(b), of the Treasury Regulations * * * and the department determined that the taxpayers' Schedule F activity was engaged in without an intent to earn a profit." (*See* Def's Pre-Trial Memo at 1.) Beginning with the first factor that Ellis labeled recordkeeping, Farnsworth testified that Plaintiffs had no business plan, "no plan projecting sales and expenses," "no written document stating the costs to raise a baby and maintain a

broodmare," "co-mingled" their business and personal records and finances, and in 14 years reported farming losses on federal Schedule F forms totaling "nearly $400,000." (*See* Def's Ex K.) Winters stated that "you can't put on paper a written business plan," stating when "horses will die or have illness." Farnsworth testified that Plaintiffs have "substantial income" from sources other than horse breeding and that they are "horse enthusiasts," who even after "a decade of losses" continued to engage in the activity "for pleasure rather than profit." (*See id.*; Ex A at 10.)

Farnsworth testified that with respect to factor two, expertise of the taxpayer, the "DOR believes Barbara has a lot of knowledge about horses but no expertise creating a profitable horse breeding business." Ellis concluded that "[w]hile the taxpayer has dabbled in owning, breeding, and showing horses for many years, the taxpayer has failed to substantiate that they have developed the expert skills need[ed] to run a profitable horse activity." (Def's Ex B at 5.) Farnsworth testified that Plaintiffs received recognition from the American Quarter Horse Breeding Association for their breeding activities from 1987 through 2011. (*See* Ptfs' Ex 2 at 1.)

Farnsworth testified that she has "no information as to the amount of time expended" by the taxpayer in carrying on the activity. (Factor 3.) Wayne testified that "Barbara has been involved with horses her entire life," and breeding is a business, not a hobby, stating that Plaintiffs have "no bond or connection with horses like a pet" and getting up in the "middle of the night to help a mare" give birth and watching a "mare die before you" is not "fun."

In response to whether Plaintiffs have an expectation that assets used in the horse breeding activity may appreciate, Plaintiffs stated that that factor is not applicable to them. (Compl at 2; Def's Ex J at 1.) Farnsworth testified that the real market value of Plaintiffs'

/ / /

property including residence and farm "has increased approximately $80,000 between 1997 and 2013 according to the Josephine County Assessor's property tax statement." (*See* Def's Ex I.)

Farnsworth testified that there is no evidence that Barbara has been "successful or profitable carrying on any other business activities." (Factor 5.)

Farnsworth testified that Plaintiffs' history of income or losses for the training and breeding activities "have been losses except for 2008, which was unsubstantiated." (Factors 6, 7.) Farnsworth testified that the "expenses [from year-to-year] seem to be increasing." (*See* Def's Exs H, K.) Ellis stated that one year Plaintiffs did not breed mares. Winters countered, stating that Plaintiffs incurred "extraordinary expenses (veterinary) for their broodmares." Farnsworth testified that the commission paid on the 2008 sale was "substantially more" than the typical "eight to ten percent."

Farnsworth testified that based on Plaintiffs' "substantial income from sources other than the breeding activity" they have been "allowed to maintain losses based on other income." (Factor 8.) (*See* Def's Exs B, D.) She testified that Plaintiffs receive a "tax benefit from the Schedule F losses" because their income taxes are lower than they would be without the Schedule F losses. Winters noted that "what generated those losses were expenses actually paid" and those expenses "could be substantiated."

Farnsworth testified that Plaintiffs have been engaged in horse activities "for more than 40 years" and there are some elements of pleasure, noting that Plaintiffs' home décor is "western" and there are horse pictures on the wall and horses at the residence. (Factor 9.) She testified that Plaintiffs' website for their Subchapter S business advertises their breeding activity and has a picture of their granddaughter who is "the youngest [American Quarter Horse Youth Association] exhibitor to make it back to the finals" after being named "Reserve World

Champion and the Intermediate Champion in the class." (*See* Def's Ex T at 4.) Farnsworth testified that Plaintiffs have "substantial transactions between them and the Circle S Ranch which is owned by Barbara's daughter and son-in-law." (*See* Def's Ex U.)

## II. ANALYSIS

As this court has previously noted, "[t]he Oregon Legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law." *Ellison v. Dept. of Rev*., TC-MD No 041142D, WL 2414746 *6 (Sept 23, 2005) (citing ORS 316.007). As a result, the legislature adopted, by reference, the federal definition for deductions, including those allowed under section 162 of the Internal Revenue Code (IRC)[2] for trade or business expenses, and IRC section 212 nonbusiness expenses incurred in the production of income.[3]

However, the code and regulations preclude deductions "for expenses incurred in connection with activities which are not engaged in for profit[,]" except as provided in section 183.[4] Treas Reg § 1.183-2(a). The regulations further provide that "deductions are not

/ / /

---

[2] IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]"

[3] IRC section 212 of the code provides, in relevant part, for the "deduction [of] all the ordinary and necessary expenses paid or incurred during the taxable year--(1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income[.]"

[4] IRC § 183(a) provides: "[i]n the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section."

IRC § 183(d) provides, in relevant part: "If the gross income derived from an activity for 3 or more of the taxable years in the period of 5 consecutive taxable years which ends with the taxable year exceeds the deductions attributable to such activity (determined without regard to whether or not such activity is engaged in for profit), then, unless the Secretary establishes to the contrary, such activity shall be presumed for purposes of this chapter for such taxable year to be an activity engaged in for profit."

allowable under section 162 or 212 for activities which are carried on primarily as a sport, hobby, or for recreation." Treas Reg § 1.183-2(a). Under section 183, if the activity is not engaged in for profit, the deductibility of expenses is limited to the amount of any profits. *Gallo v. Dept. of Rev.*, TC-MD No 011022F, WL 21675927 *3 (July 8, 2003).

The court relies on objective standards in determining whether an activity is engaged in for profit. Treas. Reg. § 1.183-2(a). The regulations set forth nine factors for the court to consider in making its determination, although the list is not intended to be all-inclusive, and no one factor controls. Treas. Reg. § 1.183-2(b). Those factors include: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort the taxpayer expends; (4) the expectation that the assets may appreciate in value; (5) the taxpayer's success in carrying on similar or dissimilar activities; (6) the history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. *Id*.

Allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992); *see also* ORS 305.427 (2007) (providing that the burden of proof in the Tax Court is a preponderance of the evidence and falls upon the party seeking affirmative relief).

Plaintiffs failed to show that their horse breeding activity is engaged in for profit. For at least the last 14 years, Plaintiffs have accumulated federal Schedule F losses totaling $396,487. (Def's Ex A at 8.) For the tax years before the court, Plaintiffs reported little gross income from the horse breeding activity. (*Id*. at 9.) Plaintiffs failed to maintain accurate books and records; Plaintiffs adjusted the reported Schedule F losses, noting that personal expenses were incorrectly

recorded as business expenses. Plaintiffs attributed their most recent losses to "extraordinary" events related to the health of their broodmares and offspring even though the reported losses in tax years 2009, 2010 and 2011 were similar to the amount of losses reported in prior years. (Def's Ex B at 8.) Plaintiffs offered no explanation for the losses incurred in the 10 prior years (a $5,158 profit was reported in 2008) or showed that they made a change in operating methods that would improve their profitability. (*See* Def's Ex B at 3.) The court acknowledges that Barbara has extensive experience training and breeding horses, but no evidence was presented explaining why Barbara has been unable to leverage her expertise into a profitable business. Plaintiffs' personal financial status permitted them to incur substantial out-of-pocket costs for multiple years with only one year showing a net profit. (Def's Ex B at 10.)

Plaintiffs state that horse breeding is a "risky business." The Internal Revenue Code agrees, stating that there is a presumption that an activity that "consists in major part of the breeding, training, showing, or racing of horses" is engaged in for profit if in any two of seven consecutive taxable years the activity reports a profit. (Treas. Reg. § 1.183-1(c)(1)(i)-(ii).)

Plaintiffs allege that "Hunt Seat Breeding" is a "new activity," not the same activity as the training and breeding activity of prior years. Plaintiffs allege that the seven year period starts from 2008, when they sold the first offspring born after Plaintiffs engaged in the new Hunt Seat Breeding activity.[5] To ascertain an activity, "the most significant facts and circumstances in making this determination are the degree of organizational and economic interrelationship of various undertakings, the business purpose which is (or might be) served by carrying on the various undertakings separately or together in a trade or business or in an investment setting, and the similarity of various undertakings." (Treas. Reg. § 1.183-1(d)(1).) Other than Barbara's

---

[5] Plaintiffs appear to have incorrectly stated the year when the seven year period begins. *See* Treas. Reg. § 1.183-1(c)(4).

testimony that Hunt Seat Breeding is more "specialized breeding than quarter horses," Plaintiffs failed to submit evidence to aid the court is ascertaining whether Hunt Seat Breeding is an activity different than Plaintiffs' prior breeding activity. Facts and circumstances are critical and Plaintiffs failed to present evidence that differentiated their Hunt Seat Breeding activity from their prior breeding activity.

### III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiffs' failed to carry their burden of proving that their Hunt Seat Breeding activity is a new activity and a for profit activity for tax years 2009, 2010 and 2011. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of March 2013.

JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Presiding Magistrate Jill A. Tanner on March 6, 2013. The Court filed and entered this Decision on March 6, 2013.*